### LAWRENCE HENDRICKS v. STATE.

No. 2136.   Decided January 22, 1913.

Rehearing denied March 19, 1913.

**1.—Murder in First Degree—Charge of Court.**

Where defendant was convicted of murder in the second degree, the court's charge on murder in the first degree need not be considered on appeal; however, the charge was correct.

**2.—Same—Charge of Court—Murder in the Second Degree.**

Where the court submitted the issues of manslaughter and self-defense and submitted a charge on murder in the second degree, which has often been approved by this court, there was no error and it is wholly unnecessary to define in the latter the words, ''tend to mitigate, excuse or justify the act.''

**3.—Same—Murder in the Second Degree—Charge of Court.**

Where the court's charge on murder in the second degree was in full compliance with approved precedent and also charged fully on manslaughter and defined adequate cause, it was not necessary to do so again in the charge on murder in the second degree. Following Best v. State, 58 Texas Crim. Rep., 327.

**4.—Same—Charge of Court—Manslaughter—Adequate Cause.**

Where the court's charge on manslaughter was more favorable to defendant than called for by the evidence, when construed as a whole, and his definition of adequate cause was correct, there was no error.

**5.—Same—Charge of Court—Burden of Proof—Reasonable Doubt.**

Where the court's charge on manslaughter in connection with his charge on murder properly applied the doctrine of reasonable doubt, the contention that the court's charge placed the burden on defendant is untenable.   Distinguishing Huddleston v. State, 54 Texas Crim. Rep., 93.

**6.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence sustained the conviction of murder in the second degree, there was no reversible error, although the jury might have reached a different verdict.

Appeal from the Criminal District Court of Dallas.   Tried below before the Hon. Barry Miller.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The State's testimony substantially showed that in the afternoon the deceased came to his store, which belonged to a company in which deceased and defendant were both interested, and defendant asked deceased something about a ring that the latter had in pledge there; that the deceased had paid interest on the ring and defendant contended that it was a personal loan, while deceased contended that it was out of the company's money, and both looked over the books with reference

thereto and became involved in a wordy altercation, whereupon defendant drew his six-shooter and shot deceased, firing two shots at him, one of which proved fatal.

The defendant claimed self-defense and manslaughter.

*W. L. Crawford, Jr.,* and *J. C. Muse* and *Albert Walker* and *C. F. Greenwood* and *R. B. Allen,* for appellant.—On question of court's charge of manslaughter: Snowberger v. State, 58 Tex. Crim. Rep., 530; 126 S. W. Rep., 878; Brown v. State, 54 Tex. Crim. Rep., 121; 112 S. W. Rep., 80; Rocquemore v. State, 59 Tex. Crim. Rep., 568; 129 S. W. Rep., 1120; Huddleston v. State, 54 Tex. Crim. Rep., 93; 112 S. W. Rep., 64.

On question of reasonable doubt: Coffin v. U. S., 156 U. S., 432.

On question of court's charge on self-defense: Swain v. State, 86 S. W. Rep., 335; Pannell v. State, 54 Tex. Crim. Rep., 498; 113 S. W. Rep., 536; Pratt v. State, 59 Tex. Crim. Rep., 635; 129 S. W. Rep., 364; Huddleston v. State, 54 Tex. Crim. Rep., 93; 112 S. W. Rep., 64; Williams v. State, 59 Tex. Crim. Rep., 624; 129 S. W. Rep., 838; Brown v. State, 54 Tex. Crim. Rep., 121; 112 S. W. Rep., 80.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, charged with murder, and when tried was convicted of murder in the second degree, and his punishment assessed at fifteen years confinement in the State penitentiary.

There were no bills of exception reserved to the admissibility or rejection of any testimony offered, but in the motion for new trial there are many complaints to the charge of the court as given and refusal of the court to give some special charges requested.

As to the complaints of that portion of the charge relating to murder in the first degree, we do not deem it necessary to discuss them, as appellant was convicted of murder in the second degree only, and the error, if error there be, could not have injuriously affected appellant. However, we have carefully read that portion of the charge, and it is couched in language frequently approved by this court. See authorities cited in secs. 418, 419, 420 and 421 of Branch's Crim. Law.

In defining murder in the second degree the court instructed the jury:

"The next lower grade of culpable homicide to murder in the first degree is murder in the second degree.

"Malice is also a necessary ingredient of the offense of murder in the second degree. The distinguishing feature, however, so far as the element of malice is concerned, is that, in murder in the first degree, malice must be proved, to the satisfaction of the jury, beyond a reasonable doubt, as an existing fact, while in murder in the second degree malice will be implied from the fact of an unlawful killing.

"Implied malice is that which the law infers from or imputes to

certain acts, however suddenly done. Thus, when the fact of an unlawful killing is established, and the facts do not establish express malice beyond a reasonable doubt, nor tend to mitigate, excuse or justify the act, then the law implies malice, and the murder is in the second degree; and the law does not further define murder in the second degree than if the killing is shown to be unlawful, and there is nothing in evidence on the one hand showing express malice, and on the other hand there is nothing in evidence that will reduce the killing below the grade of murder, then the law implies malice, and the homicide is murder in the second degree.''

This definition of murder in the second degree, where the court submits also the issues of manslaughter and self-defense, has been so often approved we hardly deem it necessary to discuss the criticisms thereof. Barton v. State, 53 Texas Crim. Rep., 443; McGrath v. State, 35 Texas Crim. Rep., 413; Smith v. State, 45 Texas Crim. Rep., 552; Carson v. State, 57 Texas Crim. Rep., 394; Harris v. State, 8 Texas Crim. App., 90; Smith v. State, 48 Texas Crim. Rep., 33; Hernandez v. State, 53 Texas Crim. Rep., 468. However, we will say that when the court fully charged on manslaughter and self-defense, it was wholly unnecessary for him to define in these paragraphs the meaning of the words ''tend to mitigate, excuse or justify the acts,'' and the paragraphs are not upon the weight to be given the testimony. The court in submitting the issue of murder in the second degree, after defining it as above stated, instructed the jury:

''If you believe from the evidence, beyond a reasonable doubt, that the defendant in the County of Dallas and State of Texas, on or about the 26th day of January, 1909, as alleged, with a deadly weapon, or instrument reasonably calculated and likely to produce death by the mode and manner of its use, in sudden passion aroused without adequate cause, and not in defense of himself against an unlawful attack, real or apparent, reasonably producing a rational fear or expectation of death or serious bodily injury, and not under circumstances which would reduce the offense to the grade of manslaughter, with intent to kill, did unlawfully and with implied malice, shoot with a pistol and thereby kill M. B. Clark, as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment at confinement in the State penitentiary for any period that the jury may determine and state in their verdict, provided it be for not less than five years.''

This submission of the issue was in full compliance with the form recommended by this court in Best v. State, 58 Texas Crim. Rep., 327. It was not necessary to define ''adequate cause'' in this paragraph. Subsequently in the charge these words were fully defined, and in considering the charge of the court, all of it must be construed together, and if it as a whole fairly defines the words and submits the issues raised by the testimony, it is sufficient. The other criticisms of the charge on murder in the second degree are hypercritical.

The charge on manslaughter in this case, if anything, was more favorable to appellant than called for by the evidence, and the criticisms thereof, when the charge is construed as a whole, are unauthorized. After defining "adequate cause," telling the jury that if by adequate cause sudden passion was aroused, the defendant would be guilty of no higher degree of offense than manslaughter, the court instructed the jury:

"If you believe from the evidence, beyond a reasonable doubt, that the defendant, with a deadly weapon, in a sudden passion arising from an adequate cause, as the same has been hereinbefore explained, and not in defense of himself against an unlawful attack producing a reasonable expectation or fear of death or serious bodily injury, did, in the County of Dallas and State of Texas, on or about the 26 day of January, 1909, as alleged, did with a pistol shoot and thereby kill M. B. Clark, the deceased, as charged in the indictment, you will find the defendant guilty of manslaughter, and assess his punishment at confinement in the State penitentiary for any term of not less than two nor more than five years."

The court further instructed the jury in his charge: "If from the evidence you are satisfied, beyond a reasonable doubt, that the defendant is guilty of murder, but have a reasonable doubt whether it was committed upon express or implied malice, then you must give the defendant the benefit of such doubt, and not find him guilty of a higher grade than murder in the second degree. Or, if from the evidence you believe, beyond a reasonable doubt, that the defendant is guilty of some grade of culpable homicide, but you have a reasonable doubt whether the offense is murder of the second degree or manslaughter, then you must give the defendant the benefit of the doubt, and in such case if you find him guilty it could not be of a higher grade of offense than manslaughter."

The contention is that in the paragraph first above copied, the court placed upon the defendant "the burden to prove beyond a reasonable doubt that adequate cause and sudden passion existed" before they would be authorized to reduce the offense to manslaughter. It is true, as contended by appellant, that manslaughter is in the nature of a defense against murder in the first or second degree, and where the State introduced testimony which would authorize a conviction of murder, the defendant would be authorized to introduce evidence to reduce the offense, which would show the offense of no higher grade than manslaughter, and if he did do so, it would be the duty of the State to prove beyond a reasonable doubt that he was guilty of the higher grade of offense before the jury would be authorized to so find, and it would also be the duty of the court to inform the jury in his charge that if there was a reasonable doubt in the premises, to give the defendant the benefit of such doubt. But in the paragraph above quoted, when taken together, we think, the court gave defendant the benefit of such doubt. Before the jury would be authorized to convict

the defendant of any offense, they must find the facts which would authorize it in so doing beyond a reasonable doubt under our law, and the court so instructed the jury as to all three degrees of unlawful homicide. Then the court instructed the jury that if they had a reasonable doubt as to what degree of unlawful homicide defendant was guilty, to give the defendant the benefit of such doubt, and not find the defendant guilty of any degree of unlawful homicide than that of which they had no doubt. We are cited by appellant to the case of Huddleston v. State, 54 Texas Crim. Rep., 93, as sustaining their contention. We do not think that case, when construed in connection with the facts and the charge as there given, sustains their contention in his case. In the Huddleston case the court required the jury to find certain facts affirmatively before they would be authorized to reduce the offense to manslaughter. In this case the jury is instructed if they have a doubt as to whether the defendant is guilty of murder in the second degree or manslaughter, to give the defendant the benefit of the doubt and find the defendant guilty of no higher degree of offense than manslaughter, as shown in the paragraphs of the court's charge above copied.

We have carefully examined the court's charge, and the special charges given at the request of appellant, and we think they present admirably every issue raised in the case. The court's charge, exclusive of the special charges requested, presented every issue raised by the testimony, but there can be no doubt that the charge as given, together with the special charges requested by appellant which were given, presented every issue raised by the testimony, and under such circumstances, when there was no error in the charge of the court, there is no such question presented as should require a reversal of the case. The evidence offered in behalf of the State, if believed by the jury, would authorize a most severe penalty. The evidence offered in behalf of the defendant might authorize the jury to find that he was acting in self-defense; but the jury finds against such contention, and under the circumstances we do not think we are authorized to disturb their finding. Certainly the court fully instructed them as to the facts under which they would be authorized to find appellant guilty of murder in the second degree and manslaughter, and they find him guilty of murder in the second degree. Also the court fully instructed them in regard to justifiable homicide, and this charge in connection with the special charges given present that issue. We have carefully reviewed every assignment in the case, and while not discussing each and every ground assigned in the motion for new trial, we have considered each of them, and we are of the opinion that in none of them are presented any error which should result in a reversal of the case under the evidence adduced.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied March 19, 1913.—Reporter.]